The next case today, number 231859, United States v. Antonio Casillas-Montero. Counsel Bacchial, please introduce yourself on the record to begin. Good morning, your honors. Linda Bacchial for appellant Antonio Casillas-Montero. When the Supreme Court decided- Was there a rebuttal time? No, your honor. Okay. Thank you for the invitation. When the Supreme Court decided Booker and Kimbrough, it did not signal a return to a chancellor's foot system of criminal justice or punishment. The seven-year sentence in this case quadruples the national average and the 66-month variance is itself greater than the statutory maximum for any of the offenses charged. The sentence is procedurally unreasonable because calling a guideline irrational or shocking is not a reasoned Kimbrough disagreement with the policy basis for a guideline. It's clear that the district court believes that animal fighting should be punished more severely than the guidelines established, but she offered no scientific or other objective basis for rejection or suggestion of a more reasonable guideline. This is very different from the cases that decide to reject the guideline such as Kimbrough for scientific reason on an objective basis about what other courts are doing. And let me ask you, those- I've read Kimbrough and I've read some other opinions doing Kimbrough analysis. There's not that many, but these are usually very lengthy opinions. It's not like a two, three page opinion or it's not a statement from the bench. It's usually a pretty hefty opinion, correct? Yes, your honor. They explain scientific and policy reasons and objective comparison with other relevant facts, other similarly situated defendants or similar kinds of cases. At least there has to be a statement, which in this case, the district judge didn't even say there was a Kimbrough variance or she disagreed with the policy behind this. But counsel, the guidelines that you're talking about, there is a commentary, a note which acknowledges that there may be cases where the cruelty is so extreme that the 12 to 18 month guidelines may not be appropriate. And the district court judge seemed to say that this is exactly such a case. So why isn't what the judge did here consistent with that qualification in the guidelines? Because the note two that you're is a departure. The district court did not indicate that it was contemplating a departure. It did not- But counsel, so this is a variance. It's not formally a departure. Correct. It's a variance. But why can't, I mean, sometimes that distinction doesn't really seem very important. Why couldn't the district court take into consideration that guideline note in deciding to vary the sentence as it did? It could accept that departures are supposed to be forewarned, and this was not. But basically, Your Honor, I think the problem here with note two is that, and this goes to the 3553 analysis, the district court exaggerated the degree of cruelty and extent of Mr. Casillas Montero's involvement when compared to other cases in which the extensive sentences that were quoted by the prosecution were granted. For example, Your Honor, it is routine in these cases, the cases relied upon by the government to advocate an over-the-top sentence here involve 114 dogs or 33 dogs. Half of the dogs, at least always in these cases, are put down because of the condition they're found in. But counsel, excuse me, I mean, the district court cited 35 years of involvement in this kind of work, cited your client's own acknowledgement that he never withdraws an injured dog from a fight. He makes them fight and basically until they die, emphasize that the four dogs that were found here were in deplorable condition. So he, he looked at facts specific to this case in deciding that there was a degree of cruelty here that required a sentence beyond the guidelines. What's wrong with that analysis? Your Honor, I think that the condition of the four dogs here, all of whom were rehabilitated, is as a sentient human being deplorable, I agree. But that's not what note two is about. And note two says it is routine for dogs to be either killed or die in a fight. That's why it's a crime. It's an offense that is punishable because of those really ugly facts. But the district court here did not take that into consideration and treated this case as if it were one of the outliers in which defendants were sentenced to 60 to 123 months because they were also involved in drug and firearm offenses, because they ran multi-state gambling offenses, because they had extensive criminal histories with 31 convictions in one case, three priors for animal cruelty. This is a case that tempts severe punishment. I understand that. But it's within a universe of criminal offenses that have been punished far less strictly. And one of the problems here is that when the district court decided that the guidelines were outrageous, she then decided not simply to abandon the GSR, but to ignore 3D 1.2 D, which says that when you have multiple counts for related offenses, they should ordinarily run concurrently. And if there is discretion, and let me analogize it. What had it been? Three victims who are human beings were injured separately. Court has discretion to sentence consecutively. Your Honor, first of all, the court does not have discretion to ignore 3D 3G 1.2 D simply because it disagrees with the guideline range. Number two, in 3G 1.2 D, as a matter of principle, says you must calculate the guideline sufficient for the first count, here that was 36 months, and then impose concurrent sentences unless the sentence on the top count was insufficient to fulfill that guideline sentence, which is not the case here. But that's a guideline, but there's two different counsels. Statutorily, the guideline can't trump the statutory ability of the sentence consecutively. But it is a procedural error, and it's a way of ensuring transparency and consistency in how sentences are meted out. But here, the decision to ignore that structural feature of the guidelines also resulted in double jeopardy. It resulted in double jeopardy, which is one of the purposes of 3D 1.2 D is to avoid double punishment for the same offense. Counsel, where is the double jeopardy? Is it with respect to imposing consecutive sentences for the two possession charges? Exactly, Your Honor, exactly. And to go back to Judge Halpy's question, this statute, which comes from a regulatory offense, was not written to in any way make clear that it contemplated a per animal basis. Now, the United States says in its brief argues that because the plural is used animals, it clearly intended, I'm sorry, the singular is used in Section A, it clearly means a per animal basis. But Mr. Casillas was sentenced and charged under Section B, which says any animal. And I won't repeat the grammatical analysis here. Counsel, there are, we are told we have to look at the entire statutory scheme, and there are other references to the animal, the animal, the animal suggesting a singular focus. But Congress made a decision when it wrote B to say animal any, and any is not ordinarily used to mean the, and this statute tracks the language of Bell, which was the statute that says made it illegal to transport any woman. This statute made it illegal to transport any dog. Counsel, I think though that the government quotes B, it does include the phrase the animal in it. So the quotation that we have on page 38 of the government's brief is that 2156B makes it unlawful to possess any animal for purposes of having the animal participate in an animal fighting venue. So I think it's focusing on the phrase the animal, which comes just a few words after any animal. Exactly, because the singular modifies any, any animal, but it has to be used for the purpose of, so you could have several dogs that were confiscated or found, and they would have to prove that the purpose for each was the fighting. But, Counsel, I think it's the language is a having the animal participate. Right, that animal, correct. I'm not sure what you mean by that. The means that. But it's still talking about having the animal participate. So it's focusing on a singular animal. And so the government's argument is it is separate offenses when you have multiple animals, given the singular used in B itself, not just other parts of the statute, but in B. Given B, I believe that this statute must be interpreted to mean a collective any, not an individual unit of prosecution. Had it been, let's say, 10 or 15 counts of different dogs, it would still have to be concurrent. Exactly, Your Honor. And that's what has happened in every other case. There are, there are cases, Anderson and Richardson, they're, finding 114 dogs and no judge has imposed a sentence on a per dog basis because the norm in these cases is that people keep many dogs and the offense is keeping dogs for the purpose of fighting. And it clearly does not contemplate every single dog as a separate count. Otherwise, the sentences would be over the top. Well, they could obviously, they could approach irrationality and the government could be faulted for not exercising any kind of sensible sentencing discretion. But on the other hand, as the government points out, yeah, this is an emotional case. They point out every dog suffers individually when they're mistreated in this way and to suggest that an offense that involves, as you pointed out, there are some cases where there are 30 or 40 dogs involved rather than four, that those should be treated the same way as one single offense. There is something irrational about that. It seems to me that the number of dog victims, if you will, just doesn't matter. Well, Your Honor, this case is not, I mean, this statute is not intended to put an end to animal cruelty. It is a federal statute that is intended to put an end to an activity, a multi-state activity or a multi-jurisdictional activity that involves many people because states and municipalities punish animal cruelty. This may be the title, but the gist of this offense is people getting together to have dogs fight as an interstate or, yeah, an interstate activity. You would say this is a different scenario. These are, I'm going to suggest some different statutes, but we have statutes that protect the manatees, which you see somewhere around our coasts here in Puerto Rico, or you see statutes protecting the sea turtles. So, would those be different? Very, Your Honor. Because you can do those, if somebody kills two manatees or harms them or is poaching three, four sea turtles, you can send those. Because the purpose of that statute is to protect the animal, not to prohibit an activity that inherently requires more than one animal. So, you would be suggesting that if Congress wants to penalize this in a manner that could prompt consecutive sentences, Congress would have to amend the statute so it would be similar to those of manatees or turtles or other endangered species? Yes, but it has no reason to because that's already covered by states and municipalities. That's not what this is about. It is about a collective activity, but I will rest on my brief. Let me ask you one last question because Judge Carreño below, she made a particular statement that said, in this case, the number of fights and duration of Mr. Casillas' involvement is extraordinary in nature. We know that for variances upwards or downwards, gall does not require that there be extraordinary circumstances. So, the standard is abuse of discretion, but she's even going, you know, beyond what is required. She's finding this to be extraordinary, which she did not have to. Is that an abuse of discretion still? Is the fact that she... She's making an explicit point. This is extraordinary. It goes beyond what is required for a variance, but I'm even finding it... It is, Your Honor, because of the degree of the variance here, because of the double jeopardy issue, this variance topped the statutory maximum for each of the offenses. There's essentially one offense here, Your Honor. I know it's legitimate to punish conspiracy and substance of offenses separately, but there was one activity that was charged here, and the consecutive sentences completely took this case out of the range of any other similar situated case. And let's assume... Let's say if Judge Carreño had sentenced for both counts concurrently, would you still be finding... It's, you know, challenging the sentence? The two 24-month sentences, if they had been concurrent with the 36? You would still be arguing that it's an abuse of discretion? It's an abuse of this... The finding that this case was extraordinary? No, I wouldn't find that... Let's assume Judge Carreño had sentenced your client to concurrent counts, concurrent. Right. Would you be still challenging? No. Okay. No, because the result would be reasonable. It wouldn't be 66 months over the statute. Because what I'm going... Back to my earlier question, it's... This is not a sentencing guideline variance then. It's the result of consecutive sentences. That's not a variance. Well, it depends on the methodology that you use to do that, Your Honor. I still think that if you would disagree with the guideline sentencing range, it doesn't mean you can ignore the structural principles of the guideline. If you do, you should announce it ahead of time. Okay. Thank you very much. Counsel, my second... I get the sense that you would be challenging if it was a three-year sentence on the conspiracy charge and they were all concurrent. That would be in excess of the 12 to 18-month guideline. Yes, Your Honor, but I understand... No, I'm not saying the guy... It was error to go above the guideline. I'm saying the degree of the variance here is not reasonable. It's the degree problem. Absolutely. She was well within her discretion to vary from the guideline, to vary upward. The extent of the participation was longer than ordinary, but the degree doesn't match the universe of cases. Thank you. Thank you. Ms. Hanson? Good morning, Your Honors. May it please the Court. My name is Tecla Hanson-Young, and I represent the United States. In most cases, there's a universe of reasonable sentences that the sentencing court can impose. And here, the seven-year sentence falls within that reasonable range. It is particularly appropriate when the district court made very specific factual findings, which Casillas agreed to in his plea. Casillas agreed to the fact that he made it his routine practice to let dogs die after fights, doing nothing to alleviate their suffering. And that was what he did normally. The district court found that to be an extreme and extraordinary circumstance, particularly given the fact that he had also agreed that he participated in more than 150 dog fights over a 35-year period in many different countries, including the Dominican Republic, Peru, Ecuador, Colombia, Mexico, as well as throughout the United States. He also helped mentor other people in the dog fighting world. He was so famous that people asked him to autograph their break sticks, which are used to break a dog's bite. And he also profited from his dog fighting fame and his experience by selling dogs, including one dog for $20,000 and other dogs for thousands of dollars. This was not just your average person participating in one or two dog fights that got swept along and, you know, had the hammer slammed down upon him by the government. This was an appropriate and reasonable sentence. And the district court went through all of the facts that it found and relied upon in reaching its sentence, both the extreme cruelty that Casillas exhibited, consistent with and drawing upon the guidance in Application 02 that specifically mentions that the killing of a dog in a way that prolongs its suffering can warrant an upward departure. And here, counsel, it seems to me that one of the arguments that defense counsel is making, particularly in the brief, is that the government has seized upon her client to make an example of after years of non-enforcement of this law. This kind of conduct has been going on for a long time. People, including the authorities, knew about it, did nothing about it, finally woke up to the problem, pursued this prosecution. And in light of the outcome of that, they're using her client as an example to atone for those years of neglect in enforcement. And the district court has emphasized the need for deterrence after all these years of neglect. And that really, that almost exclusive focus on deterrence distorted the sentencing. It was not really the more balanced sentence that 3553A requires. How do you respond to that argument? The government, well, the district court, if you read the sentencing transcript, did talk about the general need for deterrence, but it wasn't the focus of what the district court was concerned about. The district court was truly concerned about the extreme cruelty that Casillas had exhibited, and the extraordinary and extensive scope of his participation in dogfighting. Now, general deterrence is a valid statutory factor to consider when imposing a sentence, and so it's entirely appropriate for the court to consider that as a factor, which it did. But there's no evidence in the transcript itself or in the statement of reasons given by the district court that the court believed that it needed to make an example out of Casillas. Now, I would also note, I think it would have been appropriate if the court had done that here, given Casillas' prominence in the dogfighting industry. He was so well known that sentencing him to a higher sentence would have had some deterrent effect, would likely have had some deterrent effect. Now, the district court didn't make that finding, but I think that would have been a reasonable basis as well. I would also... Can I ask you about the statutory interpretation issue? Defense counsel makes the point that your interpretation would mean that if somebody is arrested and they have a hundred dogs, which apparently does happen, the sentence would really be quite sky high for this crime, and that can't be what Congress intended. Can you respond to that? I think that that's certainly possible, but that's not what happened here. But the question of statutory interpretation is separate from what happened here. It's a legal question. So how does that impact how we should actually read the words of the statute? Any sentence is bounded by the statutory maximum here, and here it would have been 10 years because there was the five-year for the conspiracy and the five-year for the substantive counts. Now, I think that the... Yeah, but if there's three, four, five, ten substantive counts, if they get stacked up, all of a sudden you get a life sentence or two life sentences, in theory. Sure, and I think that that is the potential problem that this court does not need to address here because the sentence that was imposed for each of those two counts, 24 months each, when combined is 48 months and still below the statutory maximum. But don't we have to address that argument in interpreting the statute because you're making the argument that it's a per-animal assessment, and so we do have to address that argument, I think. I don't think... And there is an underlying double jeopardy issue as well, which you have to confront. Well, respectfully, Your Honor, I don't think the court needs to address this question because this is reviewed for plain error and which he can't show because a 48-month sentence on one of those counts would have been reasonable given the extreme factual circumstances here. So the court can affirm on the basis that there was no showing of prejudice to his substantial rights. But I will say that the interpretation that we advance in the brief is correct. The unit... Prosecutors have wide discretion in charging their counts, and the unit of prosecution here under the statute is plainly the individual animal. It says any animal, but then the use of the phrase, the animal, so both the being the definitive article and then animal in the singular, it makes it plain that the unit of prosecution is the individual animal. There's other provisions in the statutory text that also confirm that of prosecution to be one animal. For example, there is 2156A, it prohibits the sponsoring of unanimal, meaning one animal. There's 2156D, which refers to a bird in the singular. And then in the definition of animal in 2156F4, it defines animal as any live bird or mammal excluding man. And looking at that definition in reference to any animal in 2156B here, makes it clear that any animal is not any number of animals, as my sister suggests, but it's any kind of animal. What about her argument that contrary to other statutes involving, as I said, manatees or sea turtles or caribous or other endangered species, here what Congress is trying to prohibit is the gathering and putting dogs to fight versus the others, people hunting the animals and actually killing them. Is there any difference in that? I don't think, I mean, there are differences in those statutes to be sure. And I would also note that the defendant hasn't raised any particular statutes for consideration, so I can't look at the text. But what I would say here is, looking at the legislative history of the Animal Welfare Act and the fact that over time, there have been stricter sentences that have been imposed by Congress, it shows that Congress was concerned with the welfare of individual animals. The Animal Welfare Act also requires individual animals to be rehabilitated and cared for. Congress was clearly concerned with the suffering of individual animals. The result suggested by the defendant here would lead to this nonsensical result where a defendant who had engaged in one dog fight with one dog would be sentenced to the same amount of time as someone who engaged in 150 dog fights or 200 or 400. And here I would add that while only four dogs were seized at Casillas' property at the time he was arrested, he also admitted in his pre-sentence interview that at one point he had more than 40 dogs on his property. And given his 35-year participation and participation in more than 150 fights, we know that it was a significant number of animals that were being impacted here. So this is, again, not a situation where you have a hobbyist or, you know, one-off person. This is somebody who really is a top-tier participant in this field and is mentoring others, encouraging it, keeping dog pedigrees to help perpetuate the illegal activity. So if anything, I would say that this is precisely the kind of conduct that would warrant the imposition of consecutive sentences. Counsel, you said just a moment ago, and I think Judge Health repressed you on this, I didn't fully understand your answer. I know you asked for a 10-year sentence here, right? I thought you just said that a 10-year sentence would be the maximum that would be permitted under the law. Why do you say that? I don't understand where that comes from. You're correct, Your Honor. The government requested a 10-year sentence. That is what the government believed was an appropriate sentence. But you are correct to point out that yes, under this interpretation, the statutory max would be 15 years. Here, the government was not seeking 15 years. The government sought 10. And the district court, I think it's also important to note that the district court didn't grant the government's request. It imposed a seven-year sentence. And that falls within the range of reasonable sentences. It appears as though, because he is, based on what was said in argument today, it appears as though he would be satisfied with a five-year sentence. Counsel indicated that they wouldn't have appealed if the counts were... No, I think she said a three-year sentence. I don't think she said... I'm not sure it matters. I don't think she said a five-year sentence. Both counts have been concurrent, then probably we wouldn't be here. Maybe. And in the reply brief, there appears to be a suggestion that maybe a five-year sentence would have been okay. But if you look at the other cases that were cited by the government in the government's brief and discussed in the briefing on appeal, the government, for top-tier dogfighting defendants, tends to seek, and district courts tend to impose, somewhere between five and ten years. And that is, Casillas' sentence here falls within that range at seven years. I think what defense counsel has argued, though, and we don't know the details of all those other cases, is that all those other cases involved other significant crimes. And that is not... Guns, drugs, gambling. So she says it's really not comparable, and this would be the only case that was just about dogfighting that would have a sentence of this length. Can you respond to that? Yes, I understand that to be her argument, and I would also say that that is incorrect. The Hargrove case involved a sentence of 60 months for somebody who had participated in 40 years of dogfighting, had lots of dogs on his property at one point in time, had up to 250 dogs on his property at one time. But he was also a decorated veteran, and he was, I believe he was 78 years old. So there were other mitigating factors there. But there was no drugs involved in that case, and that was a 60-month sentence. And the government's position is that Casillas' conduct here was more extreme. He trained other people. He participated internationally. He organized a fight, that one fight that had, one dogfighting event that had 24 fights, which the government's expert testified at sentencing was unheard of in his experience, which involved 60 investigations into dogfighting. So really the scope here was quite extraordinary, and the government's expert also testified that it was very unusual for a dogfighter to just make it his practice to let his dogs die, and that cuts against the dogfighter's economic interests. Because if you have a dog who has maybe won two fights, you can make money by breeding the dog and selling the pups as descendants of a successful dog in fights. So he could have made money by saving his dogs, and the fact that he decided not to really shows that he was just extremely cruel, as found by the district court. And Casillas presented no evidence to the contrary at sentencing. He had an opportunity to do so, and he didn't, and he in fact agreed in his plea that that was his regular practice. So in these circumstances, the sentence is reasonable. It falls within this universe compared to others. I'd also like to point out in the Chadwick case, no drugs involved in that case, a 60-month sentence. In the Anderson case, he was sentenced to 96 months. He got 60 months for conspiracy to participate in dogfighting to be served consecutively with 36 months for the substantive counts of possessing the dog for dogfighting. There were drugs involved in that case, but he more time than what Casillas got, and also there's no evidence there that there was an international involvement or that he was training other people. And yes, there was also in Anderson case, there was discussion of his manner of killing dogs by electrocution, but there were no findings made to that fact. And when we get into these gruesome methods of death, it's all just pretty extreme, and I think the district court was quite warranted here in making its findings. The district court considered mitigating factors, his age, his family circumstances, imposed a lesser sentence than what the government requested, and ultimately in the totality of circumstances, the sentence imposed was reasonable. Let me ask you another question. If you have in general terms national data, how many cases annually are prosecuted for these offenses? Because as far as I can recall in the district of Puerto Rico, this is, I think, probably the second case of such prosecution. And I'm asking that question because if, my suspicion is that there's not too many, because if there were many and there were these sentences that you're talking about, the commission maybe would be recommending higher or amending the guidelines that promote the higher sentence. So my question in general terms is, how many of you know or are prosecuted annually, or maybe in the past 10 years, how many have been prosecuted? You're correct, your honor. There are not that many cases that are being brought or being prosecuted. I don't have exact numbers, but it's, it is, we're talking dozens here, not hundreds. And it's usually the cases involve multiple, multiple dogs in a lengthier period. It doesn't just involve one, you know, dog fight, two people have a fight. Those are not the ones we see in federal courts. That's correct. The cases are, the cases that are typically being brought are larger dog fighting rings where there are many dogs involved. And that's, you know, for government prosecutorial discretion purposes, limited resources, limited ability to care for dogs after they're seized, all of those things. Any further questions? Okay, thank you very much.